THE STATE *ex rel.* THE ATTORNEY GENERAL V. MILLER.

1. Constitution: STATUTE: ONE SUBJECT. The provision of the constitution, article 10, section 28, requiring that "no bill  *  *  * shall contain more than one subject, which shall be clearly expressed in the title," prohibits the joining, in the same bill, of matters which are incongruous, disconnected, and which have no natural relation to each other.

2. ——: ——: ——. Where all the provisions of a statute fairly relate to the same subject, have a natural connection with it, and are the incidents or means of accomplishing it, then the subject is single, and, if it is sufficiently expressed in the title, the statute is valid under the above constitutional provision.

3. ——: ——: ——. The Act of March 30, 1887 (Laws, p. 272), entitled "An act fixing the number of directors in public school boards in certain cities, and providing for election of such directors, and for districting said cities therefor," meets the requirements of said rule.

The State ex rel. Atty. Gen. v. Miller.

4. ———: AMENDMENT OF STATUTES.   Where, under  the constitution, article 4, section 34, an act of the legislature undertakes to amend a former statute, it is not sufficient to say that certain words are stricken out, or certain words are inserted, but the section as amended must be set out in full.

5. ———: ———.   It is not required, however, in addition to setting out the section in full, as amended, that the amendatory act should recite the designated words stricken out, or the others inserted, or both.

6. ———: REPEALS BY IMPLICATION.   Nor does said section 34, article 4, of the constitution prohibit repeals by implication.

7. ———: SPECIAL LAW,   Said act of March 30, 1887, which fixes the number of school directors in cities of over three hundred thousand inhabitants, prescribes their qualifications, and determines the manner of their election and terms of office, is not obnoxious to the constitution, as being a special or local law.

8. ———: ———.   The statement approved in *Ewing v. Hoblitzelle*, 85 Mo. 75, and *State v. Tolle*, 71 Mo. 650, that "a statute which relates to persons or things as a class is a general law, while one which relates to particular persons or things of a class is special, and comes within the constitutional prohibition" against special laws, is but the mere general statement of a rule, and is to be qualified by the consideration that peculiarities and differences which will serve to distinguish persons or things as a class for many purposes do not necessarily furnish any basis whatever for legislative classification.

9. ———: ———.   The distinguishing features to justify such legislative classification must be such as to call for and demand a separate rule of statute law.

### Quo Warranto.

PEREMPTORY WRIT DENIED.

*Frank M. Estes, T. P. Bashaw* and *W. H. Clark* for relator.

The act of March 30, 1887, is unconstitutional and invalid:   (1)   Because said act contains more than one subject, and the subject is not clearly expressed in the title.   Const. Mo., art. 4, sec. 28; Sedgwick on Const.

and Stat. Law, p. 521n; *Ewing v. Hoblitzelle*, 85 Mo. 71; *State ex rel. v. County Court*, 41 Mo. 39; *City of St. Louis v. Tiefel*, 42 Mo. 578; *City v. Payne*, 71 Mo. 159. (2) Because said act is a local and special law. Const. Mo., art. 4, secs. 28, 53 and 54; Const. Mo., art. 9, sec. 7; Const. Mo., art. 13, sec. 2; *State ex rel. v. Herrmann*, 75 Mo. 340; *State ex rel. v. Jackson Co.*, 89 Mo. 237; *Devine v. Cook*, 84 Ill. 590; *State v. Mitchell*, 31 Ohio St. 592; *Ayer's Appeal*, 122 Pa. St. 266; *Scowden's Appeal*, 96 Pa. St. 422; *Weinman v. Railroad*, 118 Pa. 192; *State ex rel. v. Board of License*, 49 N. J. L. 482; 4 Cent. Rep. 83; 8 Cent. Rep. 340; *Brown v. State*, 79 Ga. 324; *Anderson v. Trenton*, 42 N. J. L. 486. (3) Because said act undertakes to amend certain laws, and parts thereof, without setting out such laws and parts in full, as amended. Const. Mo., art. 4, secs. 28, 34, 53 and 54; Const. Mo., art. 9, sec. 7; Const. Mo., art. 13, sec. 2; *Morrison v Railroad*, 96 Mo. 602; *State v. Thurston*, 92 Mo. 325; *State v. Chambers*, 70 Mo. 625; *State ex rel. v. Com. Ass'n*, 11 Mo. App. 570; *State v. Fitzporter*, 17 Mo. App. 270; *State ex rel. v. Frazier*, 98 Mo. 426; *Paul v. Brown*, 98 Mo. 675; *State ex rel. v. Dolan*, 93 Mo. 467.

*Campbell & Ryan* for respondent.

(1) The court will not declare the act unconstitutional, unless its unconstitutionality is clearly and certainly made to appear. *State v. Able*, 65 Mo. 357; *Phillips v. Railroad*, 86 Mo. 540–543; *State ex rel. v. Railroad*, 92 Mo. 155; *State ex rel. v. Pond*, 93 Mo. 606–618, 619, 620; *Kelley v. Meeks*, 87 Mo. 396; *Ewing v. Hoblitzelle*, 85 Mo. 64; *State ex rel. v. Laughlin*, 75 Mo. 145; *Court v. Griswold*, 58 Mo. 175. (2) The title to the act fully meets the requirement of the constitution. There is but one subject mentioned in the title and but one treated in the body of the act, and the subject of the act is clearly stated in the title. *City v.*

*Tiefel,* 42 Mo. 578; *State v. Mathews,* 44 Mo. 526; *State v. Bank,* 45 Mo. 536; *State v. Court,* 51 Mo. 392; *State ex rel. v. Dolan,* 93 Mo. 467; Cooley, Const. Lim. [2 Ed.] 744. The claim that the act undertakes to repeal, change, modify and affect and amend the charter of the school board, while the title gives no notice of any such purpose, is without support in law. It was not necessary for the title to express that it repealed or changed any part of the school laws. *State ex rel. v. Draper,* 47 Mo. 29. (3) The act is not a local act. The language of the first section, "in all cities now having or hereafter attaining a population of three hundred thousand inhabitants," meets the test—and there is nothing in the remainder of the act to alter this clear view of the case. *State ex rel. v. Herrmann,* 75 Mo. 340; *State ex rel. v. Court,* 89 Mo. 237; *Kelley v. Meeks,* 87 Mo. 396; *Rutherford v. Heddins,* 82 Mo. 388. Nor is it a special law. *State v. Tolle,* 71 Mo. 645. (4) The act does not attempt to regulate the affairs of any city or school district, nor does it alter or change the line of any school district. There is no just reason for saying that the act is applicable only to St. Louis; but even if it were true, under the decisions of the supreme court in *State ex rel. v. Walton,* 69 Mo. 556, and the *Tolle case,* 71 Mo. 645, the law would be valid. The incongruity in the fourth section of the act providing that the first election thereunder should be held not later than the first Monday in May, 1887, is of no importance, and, when the act is read without the clause, it is perfect and complete and harmonious. *St. Louis Co. v. Griswold,* 58 Mo. 175; *Clarkson v. Furniture Co.,* 22 Mo. App. 109; *Packet Co. v. Keokuk,* 95 U. S. 80. (5) Nor is the act unconstitutional because it imposes on the circuit court judges of St. Louis the duty of dividing the city into districts. Cooley, Const. Lim. [4 Ed.] 138; *State v. Harmon,* 31 Ohio St. 250; *Ex parte Robinson,* 6 McLean, 659; *Ex parte Gist,* 26 Ala. 161;

*Walker v. Cincinnati*, 21 Ohio St. 49; *Burlington v. Leebrick*, 43 Iowa, 252; *State v. Gazly*, 5 Ohio, 14, 22; *Prigg v. Com.*, 16 Peters, 540; 20 Johnson [N. Y.] 268–273; *Ex parte Liebold*, 100 U. S. 372; *People v. Hoffman*, 116 Ill. 600.

BLACK, J.—This is an information in the nature of a *quo warranto*, prosecuted by the attorney general to test the right of the respondent to the office of director in the public schools in the city of St. Louis, and the controversy is made to turn upon the constitutionality of the act of March 30, 1887 (Laws of 1887, p. 272).

The special act of February 13, 1833, and the special amendments thereof (2 Ter. Laws, 399, and 2 R. S. 1879, p. 1536), created a corporation for school purposes by the name of "the board of president and directors of the St. Louis public schools," embracing the territorial limits of the city of St. Louis as then or thereafter established. Two directors were elected from each ward of the city for the term of three years. To entitle a person to vote for a director, or to hold the office of director he must, among other things, have paid a city tax; these are some of the features of the special law.

The act of March 30, 1887, the one now in question, is entitled: "An act fixing the number of directors in public school boards, in certain cities, and providing for election of such directors, and for districting said cities therefor." The first section is as follows: "Section 1. In all cities of this state now having, or hereafter attaining, a population of over three hundred thousand inhabitants, the number of school directors or trustees, or number of members of any board having charge of public schools or public school property in such cities, under and by virtue of any special charter or general law, shall be twenty-one; seven to be elected on general ticket at large by the qualified voters of such city, and fourteen to be elected by districts by the qualified voters of such city districts."

Other sections make it the duty of the circuit court of any such city to divide the city into fourteen districts and to certify the division to the school board.   At the first election under the act one director is to be elected from each of the fourteen districts, and seven are to be elected at large.   The terms of the old members are to cease when their successors are elected and qualified. Provisions are made whereby part of the directors thus elected at the first election hold for four years and others for two years.   Thereafter the directors are elected, except to fill vacancies, for four years.   Payment of a school tax for two consecutive years next before the election is made an additional qualification to hold the office of director.   The sixth and last section repeals all conflicting acts and parts of acts.

Twenty-one directors were elected under the provisions of this law at the November election, 1887, the respondent being one of the persons then elected as a director at large.   He qualified by taking the oath of office, and entered upon and has ever since continued to discharge the duties of a director.   The pleadings admit that he possesses all of the qualifications to hold the office.   The claim of the relator is that the act of March 30, 1887, is unconstitutional on several grounds; and of these in their order.

1.   The title of the act, it is urged, does not conform to section 28, of article 4, which declares:   "No bill * * * shall contain more than one subject which shall be clearly expressed in its title."   This section in the constitution of 1875 and one of a like import in the constitution of 1865 have been the subject of frequent consideration in this court.   Its demands are that matters which are incongruous, disconnected and without any natural relation to each other must not be joined in one bill; and the title must be a fair index of the subject-matter of the bill.   A very strict and literal interpretation would lead to many separate acts relating to the same general subject, and thus produce an

evil quite as great as the mischief intended to be remedied; hence a liberal interpretation and application must be allowed. In *Ewing v. Hoblitzelle*, 85 Mo. 64, the following rule taken from Sedgwick was approved: "Where all the provisions of a statute fairly relate to the same subject, have a natural connection with it, are the incidents or means of accomplishing it, then the subject is single, and if it is sufficiently expressed in the title the statute is valid." Substantially the same rule had been laid down in several previous cases. *The City of St. Louis v. Tiefel*, 42 Mo. 578; *State v. Mathews*, 44 Mo. 523; *State v. Miller*, 45 Mo. 495; *The City of Hannibal v. The County of Marion*, 69 Mo. 571; *State ex rel. v. Mead*, 71 Mo. 268. The act in question fixes the number of directors in cities of over three hundred thousand inhabitants, prescribes their qualifications, and determines how and for what length of time they shall be elected. All these matters are closely related, and under the rule before stated constitute but one subject.

The opposing argument seems to be that while the legislature may deal with one general subject in one act under one general title, yet, when it undertakes to deal with particular regulation only, each particular regulation must stand by itself in a single act with an appropriate title. The act in question, it is said, is bad because it contains three particular regulations, namely, number of directors, election of directors and districting the cities for these elections. The argument is too subtle and refined to meet with our approval. As we have seen, the act treats of but one subject, namely, the election of directors in certain cities. All the other provisions have a natural relation to and are a part of that one subject.

The other requirement is that the subject of the bill must be clearly expressed in the title. In adopting a title the legislature may select its own language, and may use few or many words. It is sufficient that the

title fairly embraces the subject-matter covered by the act; mere matters of detail need not be stated in the title. We see no valid objection whatever to the title of the act now in question. It is a fair index to all that is embraced in the law.

2. The next contention of the relator is that the act violates section 34 of article 4 of the constitution which declares : "No act shall be amended by providing that designated words thereof be stricken out, or that designated words be inserted, or that designated words be stricken out and others inserted in lieu thereof; but the words to be stricken out, or the words to be inserted, or the words stricken out and those inserted in lieu thereof, together with the act or section amended, shall be set forth in full as amended." The object of this section is sufficiently stated in *Morrison v. Railroad*, 96 Mo. 602. It is there shown that when an act undertakes to amend a former statute it is not sufficient to say certain words are stricken out, or certain words inserted, but the section as amended must be set out in full, and this is all that is required. Here, it is true, portions of the special act creating the school corporation are repealed or modified by this act of March 30, 1887, and the last-named act does not name the sections which are thereby repealed, nor are the sections thereby modified set out in their modified form. This may lead to inconvenience in requiring a comparison of the old and the new law, but such legislation is not prohibited by the provision of the constitution before quoted. The constitution of 1865 contained a provision much like the one now in question, under which it was held that repeals by implication were not prohibited. *State ex rel. v. Draper*, 47 Mo. 29; *State ex rel. v. Maguire*, 47 Mo. 35. The repealing clause of the act now under consideration is no more, in effect, than a repeal by implication.

This act does not seek to amend any former law by simply striking out designated words, or by inserting

certain words, or by striking out words and inserting others in lieu thereof, and is not within the constitutional prohibition.

3.   The next objection is that the act of March 30, 1887, is a local and special law, and therefore violative of several sections of the constitution, and especially those clauses found in section 53 of article 4, which declare:   "The general assembly shall not pass any local or special law   *   *   *   regulating the management of public schools   *   *   *   creating corporations, or amending, renewing, extending or explaining the charter thereof.   *   *   *   In all other cases where a general law can be made applicable, no local or special law shall be enacted."

In the brief filed by, or in behalf of, respondent, much reliance seems to be placed upon *St. Joseph Board of Public Schools v. Gaylord*, 86 Mo. 406.   In that case the school corporation had been created by a special act, and the question was whether it had the power to issue bonds; the existence of the power depended upon the question whether section 11 of chapter 47 of the General Statutes of 1865 amended the special school law, and we held it did.   The question does not appear to have been made that section 11 was a local or special law.   Indeed it is so general in its terms that there is no foundation for such a claim.   The case is an authority for the proposition that the act in question, if of any validity at all, does amend the special school law of St. Louis; but it has no bearing upon any other questions involved in this controversy.

The general observation made in *Wheeler v. Philadelphia*, 77 Pa. St. 338, "that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special, and comes within the constitutional prohibition," was approved in *Ewing v. Hoblitzelle*, 85 Mo. 75, and in *State v. Tolle*, 71 Mo. 650.   In the case last cited, section 320, Revised Statutes of 1879, was

questioned on the ground that it was a special law. That section made it the duty of the judges of the circuit court in all cities having a population of more than one hundred thousand inhabitants to let a contract to some newspaper for the publication of all advertisements, judicial notices and orders of publication, and the law was upheld. In *State ex rel. Harris v. Herrmann*, 75 Mo. 346, the court had under consideration the law commonly called the notary act. Sess. Acts, 1881, p. 172. The first section provided that "the governor shall appoint and commission, in all cities having a population of one hundred thousand inhabitants or more, one notary public only to every thirty-five hundred inhabitants in said cities." The fourth section, among other things, enacted that "the office of any notary public in such city holding a commission bearing date prior to the passage of this act, and whose term of office as such notary public has not expired at the time this act becomes a law, shall be abolished at the expiration of ten days after the taking effect of this act," etc. The fourth section was held to be a special law, and therefore void, but the court at the same time declared that it was not its purpose to say aught against the other sections. The ruling in *State v. Tolle, supra*, was in terms approved.

The rule that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things is a special law, is but a statement of a general rule and was only intended as such when laid down in *Wheeler v. Philadelphia, supra*, as will be seen from the context of the opinion. A law which applies to certain school corporations only may be general, or it may be special. Much depends upon the particular matter of which the legislature is treating. To make such a law general there must be some distinguishing peculiarity which gives rise to a *necessity* for the law as to the designated

The State ex rel. Atty. Gen. v. Miller.

class. A mere classification for the purpose of legislation without regard to such *necessity* is simply special legislation of the most pernicious character and is condemned by the constitution. Mere differences which would serve for a basis of classification for some purposes, amount to nothing in a classification for legislative purposes, unless such differences are of a character as, in the nature of things, to call for and demand separate laws and regulations. The underlying principle is well stated by Chief Justice .BEASLEY, in *State ex rel. Richards v. Hammer*, 42 N. J. L. 436, where he says: "But the true principle requires something more than a mere designation by such characteristics as will serve to classify, for the characteristics which thus serve as the basis of classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be a substantial distinction, having a reference to the subject-matter of the proposed legislation, between the objects or places embraced in such legislation and the objects or places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree, at least, account for or justify the restriction of the legislation. Principles of this sort can be best elucidated by examples. I have already given a sample of a merely arbitrary classification, founded on no causal relation between the subject-matter of such legislation and the things so classified. A sample of the other, or legitimate, kind, would be signified, in a law that should give to all cities in the state situated on tide-water the privilege of using such waters in connection with their sewers."

The same principle is developed in *Ayar's Appeal*, 122 Pa. St. 266, and a practical application made of it in *Randolph v. Wood*, 49 N. J. Law, 86.

We must take judicial knowledge of the fact that there is but one city in this state having, at this time, a population of over three hundred thousand inhabitants, and that is the city of St. Louis; but the statute in question is not confined to that city. It applies and governs the election of directors of public schools in all cities hereafter attaining that population. It is said there is no reasonable probability that any other city, in this state, will attain that population during the life of the law. There is no limit to the act in point of duration. A like argument was made against some others laws made applicable in cities of one hundred thousand or more inhabitants but a few years ago, but the prediction proved a false one in a very short space of time. Another answer to the argument is, that the validity of the law does not depend entirely upon the number of public schools to which it may, by its terms, apply. It is natural, proper, and reasonably necessary to the well being of our public schools that in cities having so large a population there should be more directors than in cities having a much less population. The vast amount of money and property to be managed, and the school houses to be erected and the schools to be maintained, make it necessary that these large school corporations should be equipped with a large number of directors. There is, therefore, a fair and reasonable necessity for a classification for legislative purposes in this respect.

Suppose the legislature should deem it wise to repeal all of the special laws in the state, concerning public schools, and enact one law under one title to govern and regulate all of the public schools. No one could question the power of the legislature to pass such a law; and such a law might well provide for a greater number of directors of schools in cities of over three hundred thousand inhabitants than in cities of a less population. It is true the act in question, besides fixing the number of directors and providing for election districts,

goes on to prescribe the qualification of the directors, and their terms of office; but these are mere incidents to the general object of the act, and do not make it a special or even a local law. The act is as unobjectionable as the law considered and upheld in *State ex rel. v. Tolle, supra;* and the whole of the notary act considered in *State v. Herrmann, supra,* might be deemed unconstitutional, and still the law now in question upheld. We conclude the act in question is not a special or local law, and it is, therefore, unnecessary to consider other objections made to it, such as a want of notice of an intention to apply for it under section 54 of article 4 of the constitution of 1875. The act now in question does not concern the government or powers of cities and towns and hence section 7 of article 9 of the constitution has no application to this case.

Since there is a growing disposition to evade the prohibitions against special laws, we repeat that peculiarities and differences, which will serve to distinguish persons or things as a class for many purposes, do not necessarily furnish any basis whatever for a legislative classification. To justify such legislation the distinguishing features must be such as to call for and demand a separate rule of statute law. The rule upon the respondent to show cause is discharged and the writ denied. All concur.