MARY E. BALES et frater, Appellants, v. BALES CHAPEL BAPTIST CHURCH, Respondents.

Kansas City Court of Appeals, April 1, 1907.

1. **DEEDS: Consideration: Oral Evidence: Contract.** The recitation of the receipt of a dollar as consideration for a gift is but the expression of the usual form in deeds where no valuable consideration passes and is in no sense a contractual provision and it is competent to show the true consideration which induces the grantor to make the deed; and where the parol understanding is carried out the grantor has a moral as well as a lawful right to consider that his gift has accomplished its purpose and the grantee is held to that purpose.

2. ———: ———: **Religious Societies: Change of Name: Executed Contract.** In consideration that defendant, a religious society, would change its name to the Bales Chapel Baptist Church plaintiff executed a deed of gift to the defendant for a church and lot, the object being to perpetuate the Bales family name. *Held*, while an executed contract is one in which the object of the contract has been performed this gift was executed so far as the title to the property was concerned, but so far as its purpose of perpetuating the family name the contract was not an executed but a continuing one, and the name of the society could not be subsequently changed.

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune*, Judge.

REVERSED AND REMANDED.

*C. O. Tichenor, R. J. Ingraham* and *George B. Strother* for appellants.

Filed argument.

*S. P. Forsee* and *W. C. Forsee* for respondents.

Filed argument.

BROADDUS, P. J.—The defendant herein filed a demurrer to the plaintiffs' amended petition, which was by the court sustained, and as the plaintiffs refused to further plead and stood on their said petition, final judgment was rendered against them in favor of the defendant from which they appealed. For a proper understanding of the law of the case, it is thought best to copy the entire petition in this opinion. Said amended petition is as follows:

"For a second petition, plaintiffs state that they are brother and sister; that on the first day of February, 1895, they owned the land hereinafter particularly described, although the legal title was in plaintiff, Mary, alone.

"That defendant was and is a corporation duly incorporated.

"That on the said first day of February, 1895, plaintiff, Mary E. Bales, executed a warranty deed, a certified copy of which is hereto attached, whereby she conveyed to defendant the following tract of land in Jackson county, Missouri, to-wit:

"All lot six (6) in block four (4) of S. H. Bales' First Addition to Kansas City, as the same was designated on the recorded plat of said addition.

"That the recited consideration in said deed was the sum of one dollar, although nothing in fact was paid or intended to be paid by the defendant, said recitation having been made so that the deed should appear valid on its face, and plaintiffs admit that the deed was

valid, although it was a gift on the part of plaintiffs to defendant.

"Plaintiffs state that said lot was sixty (60) feet wide, and that there had been built upon it by them, at a cost to them of seven thousand, five hundred ($7,500) dollars, and prior to the date of said deed, a brick church; that the lot at the date of the deed was reasonably worth the sum of three thousand ($3,000) dollars, although it has been worth double that amount.

"That the chief object of plaintiffs in building said church, and in giving the same, together with the ground upon which it was situated, to defendant, was to perpetuate the family name—the name of their father and mother, who were among the first settlers of this county, their mother having located here in the year 1825; the ground so conveyed to defendant being a part of a farm upon which their parents lived for a great many years. And plaintiffs say that the agreement hereinafter named under and by virtue of which the said gift was so made by them to defendant, having this end in view, was the result of some negotiation, but that at length it was finally and fully completed, whereupon plaintiffs made the gift and without which agreement they would not have done so.

"Plaintiffs say that said church had been used by another congregation for several years prior to the date of said deed, but that the title always remained in the plaintiff, Mary, and plaintiffs further say that when said church was built, there was inserted in one of the walls thereof a stone, with the following words cut into it, to-wit: "Bales Chapel Church," which tablet, with the words upon it remains in said wall at this time.

"Plaintiffs state that defendant was a corporation sometime prior to February 1, 1895, but that it bore the name of the Walnut Grove Baptist Church, and plaintiffs say that they made known to said church that they

were willing to give said church property in contro-
versy to it, but that their object in so doing was to
perpetuate their family name, and that if and when
they should do so, said corporation must change its
name so as to accomplish said purpose, and plaintiffs
say that defendant did agree, though not in writing, to
change its name from the Walnut Grove Baptist Church
to Bales Chapel Baptist Church, the name defendant
now bears, and plaintiffs say that defendant executed
its part of said agreement by legally changing its name
as aforesaid, and that afterwards plaintiffs executed
their part of said agreement by conveying to it, under its
changed name, the property aforesaid.

"And plaintiffs say that had it not been for said
agreement, and for its execution as aforesaid on defend-
ant's part, they would not have executed and delivered
to the defendants the deed aforesaid.

"Plaintiffs state that on said first day of February,
1895, and for several months prior thereto, an organiza-
tion of Kansas City, composed of the pastors, deacons
and three other members from each of the Baptist
churches in said city—a Baptist Church Union—ex-
isted; that the object of this organization was to pro-
mote 'a more perfect union of the Baptist churches of
Kansas City, to secure the utmost harmony in all de-
nominational counsels, receive and hold property for
denominational purposes, to assist feeble churches and
to direct mission work in Kansas City, Missouri.'

"Plaintiffs say that churches were started by said
organization and churches not self-sustaining were as-
sisted by it, and plaintiffs say that said organization
was an adviser and helper, seeking to guard the rights
and to protect the material and spiritual interests of
these mission churches, and as such acted for them and
for their interests.

"Plaintiffs state that on the first day of February,
1895, and for a long time prior thereto, the Walnut

Grove Baptist Church was a mission church in Kansas City, a church needing and receiving counsel and assistance from said organization.

"And plaintiffs say that after the aforesaid agreement between plaintiffs and defendant was entered into, the pastor of the defendant representing said corporation, reported the agreement to this aforesaid organization, which took action thereon, which action appears upon the record as follows:

" 'Rev. Wm. J. Williamson, pastor of the Walnut Grove Church reported to the Board that a Mr. Samuel Bales of East Twelfth street had made, in connection with his sister, a Miss Bales, a tender to him of the Bales Avenue Church property at the northwest corner of Twelfth street and Bales avenue. A good church building, fully equipped for church purposes, on a lot, 60x140 feet, worth some ten thousand dollars or twelve thousand dollars, which had been built by Mr. and Miss Bales some three and a half years ago, and ever since occupied by the Bales Avenue Christian Church, said church being about to abandon the field; the only conditions of the gift being: first, that the Walnut Grove Church move bodily; second, that the name be Bales Chapel Baptist Church; third, that the present pastor continue with the church two years; fourth, that the church becomes self-supporting in two years. It appearing that there is an indebtedness of some four hundred and fifty dollars against the Walnut Grove Church, and Brother Williamson having reported that his church had decided to accept the gift, and had already voted to change its name, and that it was desirable to enter the new field without any debt, on motion the Board voted to assume the said indebtedness, and thus relieve the church; voted also that the Chairman James be instructed to ask the State and the Blue River boards, each for additional appropriation for the next year for Brother Williamson in view of providential developments in his field. The fol-

lowing resolutions were then unanimously adopted: That this board learns with great gratification of the munificent gift of the Bales avenue church property to the Walnut Grove Church, and would tender to the donors, Mr. Samuel Bales and his sister, Miss Bales, our grateful appreciation therefor, and that we heartily approve of the action of the Walnut Grove Church in accepting the Bales avenue church property in changing their corporate name to the Bales Chapel Baptist Church; and further, that Pastor Williamson be, and he is hereby authorized, to inform Mr. and Miss Bales that this board, and the State and Blue River Board hereby pledge to the Bales Chapel Baptist Church all necessary financial aid for the successful prosecution of its work.'

"And plaintiffs say that the defendant has always lived up to said agreement in good faith until recently, and that it now intends, in violation of said agreement and in fraud of plaintiff's rights, to change its name, and thereby the name of its church from the Bales Chapel Baptist Church to Bales Avenue Baptist Church, which it cannot in equity do without first conveying said property to plaintiff, Mary E. Bales.

"Plaintiffs say that said Bales avenue is a short and unimportant street, whose name is liable to be changed at any time by the city, and if the same should not be changed, yet if the name of the church was so altered as threatened, it would simply indicate the location of the church, and not that the Bales family had anything to do with the erection and gift of said church property to the defendant.

"And plaintiffs say the defendant intends to borrow money and to secure the loan by a mortgage or deed of trust upon said church property so given by them, so that said property may be lost to defendant, thereby defeating the object and purpose of the said gift.

"Plaintiffs say that unless restrained by this court,

defendant will change its name and the name of said church as aforesaid, and will also encumber said property as aforesaid.

"Wherefore plaintiffs pray that said deed, a copy of which is hereto annexed, may be corrected to correspond with said agreement, or if the court should not deem this a proper remedy, then, that defendant be perpetually enjoined from changing its name, and the name of said church and from encumbering its property by mortgage or deed of trust.

"Plaintiffs pray for all other and further relief which may be just and proper in the premises."

The plaintiffs in their argument admit that they have no legal or equitable right to that part of the relief asked, to restrain defendant from encumbering the property, the subject of this controversy, or to have the deed mentioned corrected so as to correspond with the alleged agreement; so that the only question pertains to their equitable right to have defendant perpetually enjoined from changing its name, and the name of the church. The vital question hinges on the allegation of the petition that it was the object of plaintiffs in conveying the property in question to defendant, then known as the Walnut Grove Baptist Church, to perpetuate the family name and that for the accomplishment of such purpose defendant agreed to change its name to that of Bales Chapel Baptist Church. This agreement was not reduced to writing and is not contained in the deed. The argument of the defendant is that, being either prior or contemporaneous with the deed, under a familiar rule of law it is merged in such deed; and that to give it force would be in effect enlarging the scope and purpose of the deed by adding a material provision.

It may be assumed without contradiction that the terms of a written contract cannot be altered or varied by the introduction of a previous or contemporaneous verbal agreement. But it is contended by the plaintiffs

that the parol agreement or understanding mentioned should not be construed as contradicting or varying the provisions of the deed, but as only going to show the consideration or inducement for its execution on their part. The consideration mentioned was one dollar which it is alleged was not paid, but that the real consideration was the agreement or understanding mentioned. It is said that: "It is now well settled that not only the amount of the consideration may be questioned by oral testimony, but the parties are not estopped from showing the character of the consideration to be different from that stated." [O'Day v. Conn, 131 Mo. l. c. 327.] The rule thus stated was approved in Edwards v. Latimer, 183 Mo. l. c. 626. We quote from the latter case as follows: "One of the principal contentions of defendant is that parol evidence was not admissible to show that the deed made to him by his mother, Mrs. Mary A. Latimer, was in consideration of his giving her his interest in the 247.85 acres, because her deed to the three-fifths in the one hundred and sixty acres recites the consideration as love and affection and one dollar." The court held, under the general rule stated, the evidence was competent. In principle, we cannot see any distinction in the case at bar and those cited. The recitation of the receipt of one dollar as a consideration for the gift was but the expression of the usual form in deeds where no valuable consideration passes and is in no sense a contractual provision of such deeds, and is not so intended. Such a recitation in the deed is a mere recital. [Jackson v. Railway, 54 Mo. App. 636.] Under the authorities cited, if the deed is to be construed as a contract, it was competent to show the consideration that induced plaintiff to make it. However, the instrument is not to be regarded in the light of a contract, but as a gift or donation, and it was not necessary that it should be supported by any consideration, good or valuable. [Bouvier's Law Dictionary, Gift.] In the very

nature of things, we must assume that the donors had a motive for making the conveyance. In other words, that there was an inducement that moved them to make the donation. The petition states what that inducement or motive was, viz.: the perpetuation of the family name of Bales in that of the "Bales Chapel Baptist Church." The property donated was of considerable value, but its material worth was not considered disproportionate to the purpose in view. This purpose was made known to the defendant, then known under the name of the Walnut Grove Baptist Church. The petition alleges that defendant agreed before the conveyance was made that in consideration, if it may be so termed, of the donation it would change its name to that of the Bales Chapel Church. The change was made and the conveyance made to the defendant under its new and present name. The terms of the parol understanding, or contract if it may be so called, were thus carried out. The plaintiffs under the circumstances had the moral as well as the lawful right to consider that their gift had accomplished its purpose.

But the defendant's proposed change of the name of the Bales Chapel Baptist Church to "Bales Avenue Baptist Church," if carried out, would defeat the purpose of the gift and the plaintiffs will have made a sacrifice of their valuable property in vain. And this action on the part of defendant is sought to be justified on the ground that there is nothing in the agreement that any given name "should forever or permanently be fostered upon the congregation." And that, "The contract being fully executed, is at end." We think we have already shown that the purpose of the gift was the perpetuation of the family name in the memorial of that of the "Bales Chapel Baptist Church." An executed contract is one in which the object of the contract has been performed. The argument is that defendant did change its name as agreed; therefore the con-

tract is at an end, and defendant has the right to change it again to suit its convenience or for any other reason. But it is equally clear that when the purpose is a continuing one the contract will remain in force as long as the purposes that induced it exist.   The purpose of the gift was a continuing one and for that reason the execution and delivery of the deed to the property did not result in an executed contract, if it may be called a contract.   The gift was executed so far as to pass the title of the property to defendant, but in so far as its purpose was concerned it was not a fully executed gift, but a continuing one.

For the reasons given, the cause is reversed and remanded.  All concur.