State v. Binswanger.

THE STATE OF MISSOURI, Respondent, v. SAMUEL BINSWANGER, Appellant.

Kansas City Court of Appeals, December 3, 1906.

1. **CITIES OF SECOND CLASS: Statutory Construction: Rules: Dramshops.** Under the charter of second-class cities the general law governing dramshops does not apply to such cities since a particular provision in said charter overcomes the general law on the subject and the subsequent enactment of a general law does not affect the repeal of a prior special provision.

2. ——: ——: ——: ——. The amendment of the charter of second-class cities changing the word "power" to "erclusive power" clearly indicates the intention to exclude the general laws relating to dramshops and this idea is reinforced by the fact that the license for dramshops must be secured exclusively from the city which divides the total amount of such license with the State and county.

3. ——: ——: ——: ——: Act of 1891. The Acts of 1891 was enacted to govern dramshops licensed by the County Court and has no reference to dramshops under the exclusive control of cities of the second class.

4. ——: ——: ——: ——: Special Law. The Missouri statute divides all cities into classes and the charter does not give the city of St. Joseph a special law so that its citizens have a law different from other citizens of the State, but the law only applies to St. Joseph by reason of its belonging to the class to which it belongs and its charter is not a special enactment but a general law.

5. —— ——: ——: ——: Sunday Law. Since second class cities have exclusive control over the dramshops a dramshop keeper selling liquor on Sunday in compliance with the ordinance of such cities cannot be prosecuted therefor under the State law prohibiting selling goods on Sunday.

Appeal from Buchanan Criminal Court.—*Hon. John A. Rich*, Special Judge.

REVERSED.

*Culver & Phillip* for appellant.

(1) The city of St. Joseph, under its charter, has the exclusive power to regulate dramshops within its limits. R. S. 1899, sec. 5508; State v. Kessels, — Mo. App. —; State v. Clarke, 54 Mo. 17; People v. Hanrahan, 4 L. R. A. 757; State v. Thompson, 160 Mo. 341; Huffsmith v. People, 8 Colo. 175; State v. Binder, 38 Mo. 450; Givens v. Van Studdeford, 86 Mo. 156. (2) A charter which confers exclusive jurisdiction upon municipal authorities operates to repeal the general law on the same subject within the municipality. Seebold v. People, 86 Ill. 33; 1 Dillon, Mun. Corp., sec. 87, 88 and note. (3) We concede the general rule announced in innumerable decisions in this and other States, that it is essential to the validity of a municipal ordinance that it be consistent with the constitution and general laws throughout the State. But this rule has no application where the Legislature has by express grant empowered the city to pass an ordinance contrary to the general law of the State; and in such circumstances, the ordinance is valid, though it conflicts with the general law. 21 Am. and Eng. Ency. Law (2 Ed.), p. 983, cases cited; State v. Clarke, 54 Mo. 36; State v. Binder, 38 Mo. 450; R. S. 1899, sec. 6258.

*John D. McNeely* for respondent.

(1) The Legislature could not grant such power, as appellant contends for, to the city of St. Joseph, for the reason that it would be an unconstitutional and a void grant of power. It would be unconstitutional because it would suspend the operation of general laws in

a particular locality. It would be unconstitutional because it would result in a partial repeal of the general dramshop law and render it a local and special law. It would be unconstitutional because it would result in a partial repeal of the general Sunday law, forbidding the sale of liquor on the first day of the week, and render it a local and special law. It would be unconstitutional because it would vary the punishment to be inflicted upon citizens of the same county for the same offense. It would be unconstitutional because it would deny "the equal protection of the laws" to citizens outside the limits of the city of St. Joseph. Section 1, Fourteenth Amendment, Federal Constitution; Sec. 53, art. 4, Missouri Constitution; Cooley, Const. Lim. (6 Ed.), 481, 483; State v. Buchardt, 144 Mo. 83, and cases cited; Henderson v. Koenig, 168 Mo. 370, and cases cited; State v. Anslinger, 171 Mo. 611, et seq. (2) Appellant's whole argument is built up around the cases of Huffsmith v. People, 8 Colo. 175, and State v. Clarke, 54 Mo. 17, neither of which apply to the case in hand. The Clarke case was decided in 1873 and the Colorado case was decided later, the Clarke case being cited as one of the chief authorities. The reasoning of the Clarke case is inapplicable, and in addition thereto the legislation therein discussed and the judicial construction placed upon it occurred under the State constitution of 1865. Sec. 53, art. 4, Missouri Constitution; Henderson v. Koenig, 168 Mo. 370, et seq., and authorities therein reviewed; State v. Anslinger, 171 Mo. 611, et seq. (3) Respondent insists that the city of St. Joseph did not have exclusive power, under its charter, to regulate dramshops within its limits, and permit the sale of liquor in any manner contrary to the general laws of the State. R. S. 1899, sec. 5508. (4) The Legislature did not intend a repeal of the dramshop law within the limits of cities of the second-class by the enactment of subdivision 21, sec. 5508, R. S. 1899, and this is shown

by the concluding provision of that paragraph. State v.
Muir, 164 Mo. 610; Lebanon v. Gordon, 99 Mo. App. 277;
State v. Gustin, 152 Mo. 108. (5) The city of St.
Joseph is without power to enact any ordinance not in
harmony with and subject to the constitution and laws
of the State of Missouri. The ordinance under which
defendant seeks protection, is in conflict with the con-
stitution of the State of Missouri, the charter of the
city of St. Joseph and the general laws of the State, and
conferred no right or authority upon defendant to sell
liquor on Sunday. St. Louis v. Meyer, 185 Mo. 583;
R. S. 1899, secs. 2243, 3011, 5502; Sec. 53, art. 4, Mis-
souri Constitution.

ELLISON, J.—The defendant was prosecuted by
information filed by the prosecuting attorney of Buch-
anan county, for selling and retailing fermented or dis-
tilled liquor on Sunday contrary to the provisions of
section 2243, Revised Statutes 1899, in relation to "Sell-
ing goods on Sunday." He was convicted in the trial
court and fined twenty-five dollars.

The cause was submitted to the court, without a
jury, on a statement of facts wherein it was agreed that
defendant was regularly licensed as a dramshop keeper
by the city of St. Joseph, a city within Buchanan coun-
ty. That he sold a pint of whiskey and a glass of beer at
his dramshop in such city on Sunday, the 8th of July,
1906. But that, prior to such sale, the city council of
St. Joseph had duly ordained a general ordinance con-
cerning dramshop keepers, which only prohibited the
sale of intoxicating liquor between the hours of 8:30 a.
m. and 12:30 p. m. on Sunday; and that the sale made
by defendant was not within that time.

The city of St. Joseph is a city of the second class
and its charter is found in chapter 91, article 3, Revised
Statutes 1899. By the express terms of section 5508,

subdivision 21, the Legislature gave to such cities the *exclusive* power to license, regulate or suppress dramshops. In State v. Kessells, 120 Mo. App. 233, we decided, that such charter expressly excluded the general State law as to dramshops from operation within the limits of such cities. We called attention and gave effect to the well recognized rule of law that a particular provision such as contained in subdivision 21 of section 5508 of the charter of cities of the second class would overcome a general law on the same subject. That, in effect, the special provision operated as an exception to the general law. And also that an enactment, subsequently, of a general law did not have the effect to repeal a prior special provision. In addition to the authority of the Missouri Supreme Court for those statements of rules of construction, we refer to 1 Dillon on Municipal Corp., sections 87, 88, where the author discusses municipal charters in their relation to the general State law.

And furthermore it appears that the word "exclusive" has been inserted in the charter as an amendment. It is getting very far beyond the bounds of reason to say, in the light of that fact, that the Legislature did not mean that the control of the council of cities of the second class should be an exclusive control. In the charter of such cities in 1879, such cities did not have exclusive control. The law then was that such cities merely had power "to license, tax, regulate or suppress dramshops." [Sec. 4644, R. S. 1879.] But in 1889 (section 1255, subdivision 21, Revised Statutes 1889), the Legislature amended this and inserted the words "exclusive power" instead of merely "power," and so it was carried into the revision of 1899. Not only that, but at the same time this amendment was put into the charter, the Legislature also amended subdivision 18 of section 4644, Revised Statutes 1879, so as to carry out the idea of exclusive control by providing for a dramshop license

*exclusively* from the city, the city dividing the total amount of such license with the State and county: See section 1255, R. S. 1889, subdivision 20, carried into revision of 1899, section 5508, subdivision 20. So that, as stated in the Kessells case, no State or county license has ever been had in such city since such amendments, a period of nearly twenty years.

In addition to what was stated in the Kessells case in answer to the suggestion that the general law of 1891 (Acts 1891, p. 128) operated as a repeal of the charter provision in controversy, counsel for defendant call attention to a provision in the first section of the act disclosing that it only purports to affect dramshop keepers who are licensed under the provisions of that act, that on its face it shows that it has no reference to cities of the second class where dramshop keepers are licensed in the manner required by the charter of such cities. The law of 1891 was enacted to govern dramshops licensed by county courts as therein required. It manifestly had no reference to such dramshops as were under the exclusive control of cities of the second class and where license fees were exclusively fixed by the city and divided by the city with the State and county as therein specifically directed.

It is suggested that the charter of cities of the second class, as interpreted in State v. Kessells, becomes a special law and gives to citizens of St. Joseph a different law from other citizens of the State. Our statute (chapter 91, Revised Statutes 1899) has divided all the cities in the State into classes, there being four in number; and in addition there are "towns and villages." Each of these differs in many ways from the other in regard to the regulation of business, or licensing or regulating vocations. They likewise present many points of difference in various police regulations. The chief parts of the suggestions now made to us, if allowed to be of any force, would destroy and set at naught the charters

of all cities in the State. The charter which has been construed by us was not made especially for the city of St. Joseph, but for all cities in the State of a certain population, which are designated as cities of the second class. The charter only becomes the charter of St. Joseph by reason of it belonging to that class. Such charters are not special enactments, but have been repeatedly recognized as general laws for nearly thirty years. [State ex rel. v. Tolle, 71 Mo. 645; Humes v. Railway, 82 Mo. 221; State ex rel. v. Wofford, 121 Mo. 61; State ex rel. v. County Court, 128 Mo. 427; Dunne v. Railway, 131 Mo. 1.]

The only remaining feature in the case relates to the difference in the statute under which this defendant is charged from that under which Kessells was prosecuted. This defendant, as already stated, is charged with a violation of the statute relating to selling goods on Sunday, in that he sold intoxicating liquors on Sunday, while Kessells was prosecuted for a violation of the dramshop act in selling such liquors on that day. We are of the opinion that the Legislature having given over to cities of the second class the exclusive power to regulate dramshops; and the sale or non-sale by dramshop keepers of intoxicating liquors on Sunday, or within certain hours of that day, being matters of regulation, it follows that defendant, not having violated the city ordinance regulating such sales, should not have been convicted. The judgment is therefore reversed and the defendant is discharged. All concur.